

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

**GERALD C. MANN**
**ATTORNEY GENERAL**

Honorable J. S. Murchison
Executive Director
State Department of Public Welfare
Austin, Texas

O-3136

Dear Sir:

Opinion No. O-3136
Re: Authority of Committee
appointed under H. S. R.
No. 71 to inspect the
records of the Old Age
Assistance Division of
the Department of Public
Welfare.

Your letter of February 7, 1941, reveals that House Simple Resolution No. 71, Regular Session, 47th Legislature, provides for an investigation into the activities and practices of the Old Age Assistance Division of the Department of Public Welfare and authorizes the Speaker of the House of Representatives to appoint a Committee to conduct the investigation. A portion of this House Resolution is set out in your letter as follows:

"* * * forthwith proceed with a complete and full investigation of the administration of old age assistance in this State and particularly said committee shall inquire into the complaints hereinabove set forth, to-wit, the conduct by which officials, investigators and supervisors of the Pension Division are alleged to have been abusing and mistreating old age assistance applicants and discriminating between applicants; that said committee be empowered to subpoena witnesses, procure written and factual evidence, command the bringing before it of such records of the Old Age Assistance Commission as it may deem fit and proper; and that said committee, in addition to con-

*COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable J. S. Murchison, page 2

        ducting said inquiry, shall be directed to
        report back to the House of Representatives,
        by not later than February twenty-first, pro-
        per legislative action by which the administra-
        tion of old age assistance in this State can
        be effectively handled in such manner as to
        deserve and receive public approval rather
        than public condemnation as is now the case."

        The Chairman of the Investigating Committee, ap-
pointed under the terms of this Resolution, has requested you
to instruct all field workers, area supervisors, and others
having charge of the confidential records and case files of
the various recipients of, or applicants for, old age assist-
ance to make these records available to the Committee and you
have requested our opinion as to "whether or not this request
is compatible with the provisions of Section 31 of Senate Bill
No. 36, 46th Legislature, Regular Session, and Attorney General's
Opinion No. O-2432."

        Section 31, Senate Bill No. 36, 46th Legislature,
Regular Session, in part, provides:

        "All records concerning any applicant or
        recipient contemplated in this Act shall be con-
        fidential, and shall be open to inspection only
        to persons duly authorized by the State, or the
        United States, to make such inspection in con-
        nection with their official duties; * * *"

        In the case of Ex parte Gray, 64 Tex. Crim. Rep.
211, 144 S. W. 531, at page 569, the pertinent facts show that
the Senate adopted a Simple Resolution providing for the election
of a Committee to investigate various matters regarding voting,
in connection with the prohibition amendment to the Constitution,
and the election laws of the State and to report generally upon
such legislation as may be necessary to correct the evils, if
any, in relation to the matters investigated. Gray was sum-

zoned and appeared before the Committee but refused to answer certain questions propounded to him. The witness after being arrested under a committment issued by the Lieutenant Governor sued out a writ of habeas corpus which was granted by a member of the Court of Criminal Appeals and the case was set down for hearing. It was contended by the Relator that one branch of the Legislature had no authority to appoint a committee and authorize it to conduct an investigation for the purpose of obtaining information and making recommendations and that if such power existed, it existed in the Legislature as a whole and would take the concurrent action of both Houses, together with the approval of the Governor, to give life and validity to an investigating committee. In holding that either House may appoint committees to conduct investigations, the Court, through Judge Harper, said:

> "* * * Section 37, art. 3, of the Constitution provides that 'no bill shall be considered unless it has first been referred to a committee,' etc. Does this mean a committee appointed by authority of both houses? Since the organization of our government each branch of the Legislature has assumed authority to appoint its own committees, without the concurring action of the other branch, and our Supreme Court in the case of Day Land & Cattle Company. v. State, 68 Tex. 544, 4 S. W. 873, holds: 'The answer of the defendant alleged that the act of February 25, 1879, was never legally passed, in that the bill was not referred to a committee of each house before it was acted upon. The answer shows that the bill was referred to a committee by the Senate, who reported upon it favorably before the Senate acted upon it, but that it was not referred to a committee by the House of Representatives before that body acted upon it. The Constitution provides that 'no bill shall be considered unless it has been first referred to a committee and reported thereon.' Const. art. 3, section 7. This does not in terms require a bill to be referred to a committee by each house before it can become a law. The requirement is that a bill shall be 'referred to a committee and reported thereon' before it shall be considered. This, from the averments of the answer, was done, and we can-

Honorable J. S. Murchison, page 4

not, under the wording of the Constitution, say
that more than this was necessary.'

"Thus it is seen that, when a bill is re-
ferred to a committee created by the Senate alone,
it has been held a sufficient compliance with sec-
tion 37 of article 3, thus recognizing the right
of each branch of the Legislature to appoint its
own committees; and section 11 of article 3 speci-
fically provides that 'each house may determine
the rules of its own proceedings,' and if the
Senate in the exercise of its discretion deem it
essential to appoint a committee to gather informa-
tion and report back recommendations in regard to the
enactment of laws, we think it had the power and au-
thority. This has been the construction of our Con-
stitution by all of our Legislatures in the past, the
construction that the Congress of the United States
has given to the power possessed by each branch there-
of, and the construction of the powers of each branch
of the Legislature in almost every state in the Union,
in the absence of constitutional inhibition; and we
hold that the Senate had the authority and power to
create the committee and authorize it to gather in-
formation and make recommendations on all subjects
upon which the Legislature would have the right to
enact laws. * * *" (Underscoring ours)

The facts in Terrell vs. King, 118 Tex. 237, 14 S.
W. (2d) 786, show that a tax survey committee was created by a
Joint Resolution by the 40th Legislature to collect information
necessary to the revision of the tax laws of the State.   The
Resolution provided that the members of the Committee were to
be paid Ten ($10.00) Dollars per day for each day they served.
Appellee, as a citizen and taxpayer sought to enjoin the Comp-
troller from issuing warrants to the committee members because,
as he contended, the Committee was unconstitutional and void.
In speaking of the right of each House to appoint investigating
committees, the court said:

"* * * In declaring, in section 11 of article 3, that 'each house may determine the rules of its own proceedings,' the Constitution plainly delegates to each house the choice of methods for the most advantageous use of its functions in the exercise of the state's 'legislative power,' which Mr. Cooley defines as 'authority under the Constitution to make laws, and to alter and repeal them.' Cooley's Constitutional Limitations (8th Ed.) p. 163. Having such choice of methods, each house is fully authorized to appoint committees to make investigations and conduct inquiries and gather information with respect to the operation of subsisting laws and the need for their improvement, alteration or repeal. McCulloch v. Maryland, 4 Wheat. 409, 4 L. Ed. 579. Not only does the Constitution, in the grant of the rule-making power, authorize either house to name such committees as it may deem necessary or proper for purposes of investigation and inquiry, when looking to the discharge of any legitimate function or duty of such house, but the Constitution goes further and makes consideration by a committee a condition precedent to the enactment of any law. Section 37, article 3.

"* * * The authority of each house to use legislative committees of inquiry and investigation is affirmed in Cooley's Constitutional Limitations (8th Ed.) at page 275, where the author says:

"'Each house must also be allowed to proceed in its own way in the collection of such information as may seem important to a proper discharge of its functions and whenever it is deemed desirable that witnesses should be examined, the power and authority to do so is very properly referred to a committee, with any powers short of final legislative or judicial action as may seem necessary or expedient in the particular case.'

"* * * Our conclusion that the Legislature or either house possesses authority to order com-

mittee investigations and inquiries, in order to
get information requisite to the right use of
legislative power, is but an application of the
principle often recognized by this court that a
constitutional grant of power includes 'authority
to do all things necessary to accomplish the ob-
ject of the grant. Smisson v. State, 71 Tex. 255,
9 S. W. 112; Texas Cent. R. Co. v. Bowman, 97 Tex.
422, 79 S. W. 295; Terrell v. Sparks, 104 Tex. 197,
135 S. W. 519. * * *" (Underscoring ours)

The above cited authorities clearly establish the
power and authority of the House of Representatives to appoint
committees to conduct investigations and inquiries into matters
with respect to which legislation is contemplated. In making
its investigation, conforming to the provisions of House Simple
Resolution No. 71, such committee will be clearly acting with
"due authority of the State." The power resting in the House
of Representatives has, in our opinion, been legitimately exer-
cised through the medium of House Simple Resolution No. 71. Ac-
cordingly, it is our opinion that the committee so appointed is,
within the meaning of Section 31, Senate Bill No. 36, 46th Legis-
lature, "duly authorized by the State * * * to make" an inspection
of the records mentioned in your opinion request.

The above conclusion is not inconsistent or incom-
patible with Attorney General Opinion No. 0-2432; in Opinion
No. 0-2432, the question under consideration was whether under
Section 31 of Senate Bill No. 36, 46th Legislature, an employee
of the Department of Public Welfare could be compelled to dis-
close in court, in cases involving private parties, any of the
facts and information contained in case records of applicants
for, or recipients of, old age assistance. The opinion is
clearly limited to the question presented therein and does
not purport to answer a question regarding the right of State
Officers to inspect old age assistance records in connection
with their official duties.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Harry A. Shuford
Assistant

APPROVED FEB 13, 1941

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN